UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| U.S. Bank National Association,<br><br>     Plaintiff,<br>vs.<br><br>MBT Credit Co., Inc., d/b/a Monroe Bank & Trust,<br><br>     Defendant. | Court File No. 0:11-cv-___ (___/___) |

## COMPLAINT

For its complaint against the defendant MBT Credit Co., Inc., d/b/a Monroe Bank & Trust ("MBT"), plaintiff U.S. Bank National Association ("U.S. Bank") alleges as follows:

### INTRODUCTION

1. The financing of mortgage loans in the United States involves a system of brokers, lenders, investors, and service providers. Very often mortgage loans are originated between borrowers face-to-face with lenders or brokers and then the loans are often sold and resold "downstream" in what is called "the secondary market."

2. Often, government-sponsored entities such as Federal National Mortgage Association (FNMA or "Fannie Mae") or the Federal Home Loan Mortgage Corporation

(FHLMC or "Freddie Mac") are involved in these transactions as downstream purchasers of mortgage loans on the secondary market.

3.  Investors on the secondary market do not normally have firsthand interaction with borrowers, and certainly not at or before the time the loans are originated. These entities therefore are at the mercy of the originating lender or broker to ensure that borrowers are who they say they are, that loan documents and disclosures are complete and accurate, that loan proceeds are properly distributed or paid out, that collateral (that is, the mortgaged property) is as it is described in loan documents, and that loans, in all respects, match criteria for resale on the secondary market.

4.  To protect themselves from the risk of buying loans that are not what they would appear to be in all material respects, downstream loan purchasers or investors on the secondary market regularly require that upstream loan sellers adhere to guidelines, give covenants, and make warranties as to the loans' meeting the buyers' prerequisites.

5.  Investors in mortgage loans on the secondary market require loan sellers to accept the obligation to buy back (or "repurchase") defective loans and to indemnify downstream loan buyers for third-party claims based on defective loans.

6.  This case involves loans that Plaintiff U.S. Bank bought from Defendant MBT. U.S. Bank sold the loans to Freddie Mac, which, as part of its quality control audit program, found that two of the loans that U.S. Bank bought from Monroe Bank failed to conform with agency regulations and guidelines. Freddie Mac required U.S. Bank to buy

*U.S. Bank Complaint vs. Monroe Bank & Trust*

*Page 2 of 14*

the loans back. U.S. Bank bought them back and, in turn, has made demands on defendant Monroe Bank to fulfill its obligations under the parties' agreement in regard to the loans.

7. Defendant MBT contractually agreed to buy back the loans at issue and agreed to indemnify U.S. Bank or compensate U.S. Bank for its losses in connection with the subject loans (including attorney's fees) but Monroe Bank, to date, has refused to meet its contractual and common law obligations.

## PARTIES

8. U.S. Bank is a national association organized and existing under the laws of the United States whose articles of association designate Ohio as the location of its main office for purposes of its banking charter. U.S. Bank's executive offices are in Minneapolis, Minnesota.

9. Defendant MBT Credit Co., Inc., d/b/a Monroe Bank & Trust ("MBT," herein) is a Michigan-based community financial institution headquartered in Monroe, Michigan, with branch locations throughout Southeast Michigan.

10. MBT is owned by MBT Financial Corp, a holding company and a Michigan corporation.

11. MBT's principal place of business and its executive offices are located at 102 E. Front Street, Monroe, Michigan according to records of the Michigan Secretary of State.

*U.S. Bank Complaint vs. Monroe Bank & Trust*

*Page 3 of 14*

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this matter based on diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

13. Venue is proper in the United States District Court for the District of Minnesota pursuant to 28 U.S.C § 1391, as a substantial part of the events or omissions giving rise to this action occurred within the District of Minnesota.

## FACTUAL BACKGROUND

## PARTIES' WHOLESALE MORTGAGE PURCHASE AGREEMENT

14. On or about November 19, 2004, U.S. Bank and Monroe Bank entered into a contractual agreement entitled U.S. Bank N.A. Wholesale Mortgage Purchase Agreement ("the MPA").

15. Pursuant to the MPA, MBT was to sell and U.S. Bank was to buy mortgage loans on residential real estate that were eligible VA (Veterans Administration), FHA (Federal Housing Administration), RHS (U.S. Department of Agriculture Rural Housing Service) (formerly "FmHA loans") or Conventional Mortgage Loans.

16. All loans sold by MBT to U.S. Bank under the MPA were to be originated and closed according to federal agency regulations and Monroe Bank expressly assumed the obligation of ensuring the compliance of all mortgage loans sold under the MPA with applicable agency regulations existing at the time of the purchase.

*U.S. Bank Complaint vs. Monroe Bank & Trust*

*Page 4 of 14*

17. MBT expressly warranted that each mortgage loan sold under the MPA would be eligible for sale to the Federal Home Loan Mortgage Corporation (FHLMC or "Freddie Mac").

18. In the MPA, MBT made the following representations, warranties, agreements, and commitments:

- MBT agreed that U.S. Bank, at its sole and absolute discretion, could accept or reject any Mortgage Loan offered to U.S. Bank by Monroe Bank under the agreement;

- MBT represented that, as to each loan subject to the MPA, "to the best of [MBT's] knowledge, there [was] no adverse information or documentation concerning the Borrower or the Mortgaged property other than those, if any, reflected in the documentation provided by [MBT] to U.S. Bank;

- MBT represented that "Each Mortgage Loan and related Underwriting Package [subject to the MPA] complie[d] with any applicable Agency Regulations and the loan types and pricing then offered by U.S. Bank. [Monroe Bank] understands and agrees that the Agency Regulations are incorporated in and made a part [of the MPA]";

- MBT agreed to hold U.S. Bank, its directors, officers, and employees harmless from any loss, damage, cost or expense resulting from or alleged to have resulted from, any failure of [Monroe Bank], its directors, officers, employees, or agents to comply with the provisions, representations, and

*U.S. Bank Complaint vs. Monroe Bank & Trust*

*Page 5 of 14*

> the warranties in this Agreement, including, but not limited to, [Monroe Bank's] failure to comply with any laws or regulations;

- MBT agreed that its indemnity obligations would "apply to all costs and expenses, including attorney's fees, incurred by U.S. Bank with or without suit, in defending against any and all claims by Borrowers, governmental agencies, or others, or resisting any defense; and, finally,

- MBT agreed that:

> In addition to all of the obligations, agreements, representations and warranties specifically set forth herein, [MBT] agree[d] to perform all obligations and agreements, make all representations and warranties, and comply with all the provisions of the Correspondent Manual…delivered to [MBT], as may be modified and amended from time to time…All provisions of the Correspondent Manual are hereby incorporated into this Agreement by reference.

## INDIVIDUAL MBT /USB MORTGAGE LOAN PURCHASES

### (1)  BASSINGER

19.   On or about September 28, 2007, MBT originated a thirty-year mortgage loan to Michael J. Bassinger and Sherry A. Bassinger, with a loan principal amount of $417,000.00 secured by a mortgage on property with the street address of 3728 Consear Road, Lambertville, Michigan 48144 (the "Bassinger Loan").

20.   Pursuant to the MPA, U.S. Bank accepted the Bassinger Loan offered by MBT.

21.   U.S. Bank, in turn, sold the loan to third-party Freddie Mac.

*U.S. Bank Complaint vs. Monroe Bank & Trust*

*Page 6 of 14*

22. On or about December 21, 2010, Freddie Mac notified U.S. Bank that the Bassinger Loan had been selected for a Freddie Mac post-purchase quality-control review and Freddie Mac concluded that the loan did not qualify for purchase by Freddie Mac.

23. Freddie Mac determined that the loan did not comply with Freddie Mac's requirements and had to be repurchased.

24. Specifically, Freddie Mac's audit included a historical appraisal review that determined that the original appraisal was improper and inflated.

25. This improper and inflated appraisal constituted a material misrepresentation.

26. This misrepresentation, whether intentional or inadvertent, materially changed the nature and quality of the Bassinger loan.

27. Accordingly, Freddie Mac required U.S. Bank to repurchase the loan from Freddie Mac.

28. U.S. Bank appealed Freddie Mac's repurchase demand on the Bassinger loan and, on February 2, 2011, Freddie Mac rejected the appeal and reaffirmed its repurchase demand.

29. U.S. Bank repurchased the loan from Freddie Mac.

30. On or about December 28, 2010, U.S. Bank sent a letter to MBT with a demand that Monroe Bank repurchase the Bassinger loan from U.S. Bank and make U.S. Bank whole for U.S. Bank's losses on the Bassinger Loan due to Freddie Mac's

*U.S. Bank Complaint vs. Monroe Bank & Trust*

*Page 7 of 14*

triggering of its right to require repurchase, which triggered MBT's obligation to repurchase and/or make whole U.S. Bank pursuant to the MPA.

31. As of August 22, 2011, U.S. Bank renewed its demand on MBT and its total loss on the Bassinger loan at that time was $ 95,378.33.

32. MBT has, to date, refused to make U.S. Bank whole for the losses that U.S. Bank has incurred in connection with the Bassinger Loan for which Monroe Bank is responsible pursuant to the MPA and documents incorporated therein by express reference.

**(2)  HAVLICSEK**

33. On or about July 27, 2007, MBT originated a thirty-year mortgage loan to Mark J. Havlicsek and Terri A. Havlicsek, with a loan principal amount of $127,800.00 secured by a mortgage on property with the street address of 1837 Electric Street, Wyandotte, Michigan 48192 (the "Havlicsek Loan").

34. Pursuant to the parties' MPA, U.S. Bank accepted the Havlicsek Loan offered by MBT.

35. U.S. Bank, in turn, sold the loan to third-party Freddie Mac.

36. On or about September 21, 2010, Freddie Mac notified U.S. Bank that the Havlicsek Loan had been selected for a Freddie Mac post-purchase quality-control review and Freddie Mac concluded that the loan did not qualify for Freddie Mac's program.

*U.S. Bank Complaint vs. Monroe Bank & Trust*

*Page 8 of 14*

37. As a result of the review, Freddie Mac determined that the appraised value of the subject property was unsupported.

38. Freddie Mac's audit included a historical appraisal review that determined that the original appraisal was improper and inflated.

39. This improper and inflated appraisal constituted a material misrepresentation.

40. This misrepresentation, whether intentional or inadvertent, materially changed the nature and quality of the Havlicsek loan.

41. Consequently, Freddie Mac required U.S. Bank to repurchase the loan from Freddie Mac.

42. U.S. Bank appealed Freddie Mac's repurchase demand and, on February 2, 2011, Freddie Mac rejected the appeal and reaffirmed its repurchase demand.

43. U.S. Bank repurchased the loan from Freddie Mac.

44. On or about December 21, 2010, Bank sent a letter to MBT with a demand that MBT repurchase the Havlicsek loan from U.S. Bank and make U.S. Bank whole for U.S. Bank's losses on the Havlicsek Loan due to Freddie Mac's triggering of its right to require repurchase, which triggered Monroe Bank's obligation to repurchase and/or make whole U.S. Bank pursuant to the MPA.

45. As of March 1, 2011, U.S. Bank renewed its demand on MBT and its proposed settlement offer on the Havlicsek loan at that time was $35,715.31.

*U.S. Bank Complaint vs. Monroe Bank & Trust*

*Page 9 of 14*

46. By June 13, 2011, U.S. Bank estimated the damages from the Havlicsek loan to be $135,426.47.

47. MBT has, to date, refused to make U.S. Bank whole for the losses that U.S. Bank has incurred in connection with the Bassinger Loan for which MBT is responsible pursuant to the MPA and documents incorporated therein by express reference.

## COUNT I: BREACH OF CONTRACT

48. All of the foregoing paragraphs of this Complaint are incorporated herein by reference.

49. Plaintiff U.S. Bank and Defendant MBT at all relevant times were parties to the above-referenced MPA, a legally enforceable contract, the principal terms being that U.S. Bank agreed to buy and MBT agreed to sell mortgage loans subject to certain terms and conditions (hereinafter "the contract").

50. Plaintiff U.S. Bank complied in all respects to its obligations under the contract.

51. MBT, by selling U.S. Bank loans that did not meet the specifications and requirements of the contract, for which, by contract, it had assumed responsibility, breached the contract.

52. MBT's breaches of the contract resulted in U.S. Bank incurring damages exceeding $75,000.

*U.S. Bank Complaint vs. Monroe Bank & Trust*

*Page 10 of 14*

## COUNT II: BREACH OF CONTRACT

53. All of the foregoing paragraphs of this Complaint are incorporated herein by reference.

54. Plaintiff U.S. Bank and Defendant MBT at all relevant times were parties to the above-referenced Mortgage Purchase Agreement, a legally enforceable contract, the principal terms being that U.S. Bank agreed to buy and MBT agreed to sell mortgage loans subject to certain terms and conditions (hereinafter "the contract").

55. Plaintiff U.S. Bank complied in all respects to its obligations under the contract.

56. MBT, by refusing to repurchase the above-referenced loans, for which, by contract, it had assumed responsibility, breached the contract.

57. MBT's breaches of the contract resulted in U.S. Bank incurring damages exceeding $75,000.

## COUNT III: BREACH OF CONTRACT

58. All of the foregoing paragraphs of this Complaint are incorporated herein by reference.

59. Plaintiff U.S. Bank and Defendant MBT at all relevant times were parties to the above-referenced Mortgage Purchase Agreement, a legally enforceable contract, the principal terms being that U.S. Bank agreed to buy and MBT agreed to sell mortgage loans subject to certain terms and conditions (hereinafter "the contract").

*U.S. Bank Complaint vs. Monroe Bank & Trust*

*Page 11 of 14*

60. Plaintiff U.S. Bank complied in all respects to its obligations under the contract.

61. MBT, by refusing to indemnify U.S. Bank for its losses from the repurchase demands by Freddie Mac for which MBT, by contract, had assumed responsibility, breached the contract.

62. MBT's breaches of the contract resulted in U.S. Bank incurring damages exceeding $75,000.

## COUNT IV: CONTRACTUAL & COMMON LAW INDEMNIFICATION

63. All of the foregoing paragraphs of this Complaint are incorporated herein by reference.

64. MBT agreed to indemnify and hold U.S. Bank harmless from any claim, loss or other damage to U.S. Bank including reasonable attorneys' fees resulting in whole or in part from any inaccuracy or incompleteness in mortgage loan documents relevant to mortgage loans sold by MBT to U.S. Bank.

65. Mortgage loan documents in the above-referenced loans were inaccurate or incomplete as described in preceding paragraphs.

66. Freddie Mac forced U.S. Bank to repurchase the above-referenced loans because of wrongful acts or omissions and defects in the loans for which MBT, and not U.S. Bank, bore responsibility.

*U.S. Bank Complaint vs. Monroe Bank & Trust*

*Page 12 of 14*

67. The right of indemnity exists whenever the relation between the parties is such that either in law or in equity there is an obligation on one party to indemnify the other, as where one person is exposed to liability by the wrongful act of another in which he did not join.

68. U.S. Bank is entitled to indemnification in this case from MBT contractually and under the common law.

69. U.S. Bank has made demand for indemnification in regard to losses it has incurred and continues to incur, and MBT has refused to indemnify U.S. Bank or make U.S. Bank whole for losses U.S. Bank suffered due to the wrongful acts and omissions by MBT or its authorized agents.

70. U.S. Bank has damages exceeding $75,000 for which it is entitled to indemnification by MBT by contract and under rights of common law indemnification.

*U.S. Bank Complaint vs. Monroe Bank & Trust*

*Page 13 of 14*

WHEREFORE, based on the foregoing, Plaintiff prays for judgment as follows:

i. For damages in an amount greater than $75,000, with an exact amount to be proven at trial;

ii. For an award of costs, disbursements, interest, and attorneys' fees as allowed by law; and

iii. For such other and further relief as the Court deems just and equitable.

Dated: September 23, 2011         LEVENTHAL pllc

By:   s/ Seth Leventhal

Seth Leventhal, #0263357

2100 Rand Tower
527 Marquette Ave. South
Minneapolis, Minnesota 55402

email: seth@leventhalpllc.com

*Attorneys for U.S. Bank National Association*

*4846-8208-1802, v. 4*

*U.S. Bank Complaint vs. Monroe Bank & Trust*

*Page 14 of 14*